# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MERLINDA L. INES, | CASE NO. 08cv1267 WQH (NLS) |
| Plaintiff, | **ORDER** |
| vs. | |
| COUNTRYWIDE HOME LOANS, INC., et al., | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Ex Parte Application for Temporary Restraining Order (Doc. # 9).

## **Background**

On July 15, 2008, Plaintiff initiated this action by filing the Complaint (Doc. # 1). On July 15, 2008, Plaintiff also filed the Ex Parte Application for Temporary Restraining Order ("First Application for TRO") (Doc. # 3). In the First Application for TRO, Plaintiff requested that the Court stay execution of Plaintiff's eviction from her home on grounds that Defendants violated the Rosenthal Fair Debt Collection Practices Act under California law, Cal. Civ. Code § 1788, *et seq.* ("RFDCPA")*,* and the Fair Debt Collection Practices Act under federal law, 15 U.S.C. § 1692 ("FDCPA"), and therefore had no standing to foreclose on Plaintiff's property and force an eviction. On July 18, 2008, after hearing oral argument from both parties, the Court issued an order denying the First Application for TRO on grounds that Plaintiff failed to demonstrate a likelihood of success on the merits or that the balance of

hardships tips sharply in her favor (Doc. # 7).  The Court concluded that Plaintiff had not established a likelihood of success on the merits because Plaintiff failed to demonstrate that the FDCPA and RFDCPA apply to Defendants.

On July 25, 2008, Plaintiff filed a second Ex Parte Application for Temporary Restraining Order ("Second Application for TRO") (Doc. # 9).   In the Second Application for TRO, Plaintiff states: "The requested temporary restraining order essentially seeks reinstatement to take care of my family and our possessions while the court determines right to claims against the subject property and who owns my home." *Second Application for TRO,* p. 3.  Plaintiff asserts that she is entitled to relief under 12 U.S.C. section 2605(b), which "concerns the requirement that a borrower must be notified in writing of any assignment, sale or transfer of the serving of the loan to any other person." *Id.* at 5.  Plaintiff asserts that there is a "very good probability of success" on the merits of her claim for violation of section 2605(b).  Plaintiff states:

> I did not receive any notice of the wrongful unlawful detainer action against me in time to respond.  I was given the legal documents after a timely response was due.  Inadvertently the unlawful detainer documents were mixed with some junk mail and I saw and opened the envelop after a response was due and thus had no opportunity to respond.

*Id.* at 3.  Plaintiff also asserts that Defendants have failed to submit evidence to demonstrate that they are the holder in due course and of documentation of ownership.

## **Standard of Review**

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a TRO without notice to the adverse party where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant . . . ." FED. R. CIV. P. 65(b).  Regardless of notice to Defendant, the standard for issuing a TRO is similar to the standard for issuing a preliminary injunction, and requires that the party seeking relief show either "(1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party." *Homeowners Against the Unfair Initiative v. Calif. Building Industry Assoc.*, Civil No. 06CV152 JAH

1  (WMc), 2006 U.S. Dist. LEXIS 97023, *4 (S.D. Cal. Jan. 26, 2006) (citing *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002)). "[T]hese two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Dep't Parks & Rec. of Calif. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006) (citations omitted). The underlying purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006).

## **Analysis**

The underlying basis of Plaintiff's Second Application for TRO is that Defendants violated the 12 U.S.C. section 2605 by failing to provide Plaintiff with sufficient notice of the foreclosure sale of her property and subsequent eviction. Plaintiff asserts that in light of this violation, Defendants did not have standing to foreclose on Plaintiff's property and force her eviction. Plaintiff requests that this Court "reinstate [Plaintiff's] rights to [her] home possessions." *Second Application for TRO,* p. 16.

12 U.S.C. section 2605 governs the servicing of mortgage loans and the administration of escrow accounts. Section 1605(b), on which Plaintiff relies, provides in full:

> (b) Notice by transferor or loan servicing at time of transfer.
> (1) Notice requirement. Each servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person.
> (2) Time of notice.
> (A) In general. Except as provided under subparagraphs (B) and (C), the notice required under paragraph (1) shall be made to the borrower not less than 15 days before the effective date of transfer of the servicing of the mortgage loan (with respect to which such notice is made).
> (B) Exception for certain proceedings. The notice required under paragraph (1) shall be made to the borrower not more than 30 days after the effective date of assignment, sale, or transfer of the servicing of the mortgage loan (with respect to which such notice is made) in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by--
> (i) termination of the contract for servicing the loan for cause;

> (ii) commencement of proceedings for bankruptcy of the servicer; or
> (iii) commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).
> (C) Exception for notice provided at closing. The provisions of subparagraphs (A) and (B) shall not apply to any assignment, sale, or transfer of the servicing of any mortgage loan if the person who makes the loan provides to the borrower, at settlement (with respect to the property for which the mortgage loan is made), written notice under paragraph (3) of such transfer.
> (3) Contents of notice. The notice required under paragraph (1) shall include the following information:
> (A) The effective date of transfer of the servicing described in such paragraph.
> (B) The name, address, and toll-free or collect call telephone number of the transferee servicer.
> (C) A toll-free or collect call telephone number for (I) an individual employed by the transferor servicer, or (ii) the department of the transferor servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.
> (D) The name and toll-free or collect call telephone number for (I) an individual employed by the transferee servicer, or (ii) the department of the transferee servicer, that can be contacted by the borrower to answer inquiries relating to the transfer of servicing.
> (E) The date on which the transferor servicer who is servicing the mortgage loan before the assignment, sale, or transfer will cease to accept payments relating to the loan and the date on which the transferee servicer will begin to accept such payments.
> (F) Any information concerning the effect the transfer may have, if any, on the terms of or the continued availability of mortgage life or disability insurance or an other type of optional insurance and what action, if any, the borrower must take to maintain coverage.
> (G) A statement that the assignment, sale, or transfer of the servicing of the mortgage loan does not affect any term or condition of the security instruments other than terms directly related to the servicing of such loan.

12 U.S.C. § 2605(b).

As the moving party, it is Plaintiff's burden to establish the likelihood of success on the merits of her claim. After reviewing Plaintiff's Second Application for TRO, the Court concludes that Plaintiff has not established a likelihood of success on the merits because Plaintiff does not assert with any specificity how Defendants have failed to comply with the notice requirements articulated in section 1605(b). Plaintiff also concedes that her own

inadvertence prevented her from receiving any notice of the unlawful detainer action against her in a timely fashion. *Second Application for TRO,* p. 3 ("Inadvertently the unlawful detainer documents were mixed with some junk mail and I saw and opened the envelop after a response was due"). Plaintiff has failed to demonstrate a likelihood of success on the merits of her claim that Defendants violated 12 U.S.C. section 26505(b). Even assuming Plaintiff could show the possibility of irreparable harm, the Court concludes that Plaintiff is not entitled to relief under this formulation of the standard of review.

Plaintiff contends that the balance of hardships favors Plaintiff because Plaintiff and her family have been evicted from their home and stand to lose their real property. However, the Court notes that Plaintiff was given notice of the trustee sale in April, 2008, and the state court has ruled that Plaintiff's eviction is lawful. In support of the Second Application for TRO, Plaintiff also submitted a copy of a notice from Defendant Countrywide Home Loans, dated August 30, 2007, which notified Plaintiff that her loan was in default. While the putative loss of Plaintiff's home is a significant interest, the Court finds that Plaintiff's delay and lack of diligence in filing the Second Application for TRO has prejudiced Defendants' ability to defend. *See Apache Survival Coalition v. OLA Cassadore Davis*, 118 F.3d 663, 665-66 (9th Cir. 1997) (affirming district court's denial of TRO on the grounds of laches because of lack of due diligence). The Court further notes that substantial time has passed since Plaintiff has been put on notice of the foreclosure proceedings, and the eviction and alleged sheriff's sale will provide Defendants with funds to which they are entitled. After reviewing the equities in this case, the Court concludes that Plaintiff has not met her burden of establishing that the balance of hardships tips sharply in her favor. Even assuming Plaintiff has raised serious questions going to the merits of this case - and, as previously discussed, the Court concludes that Plaintiff has not done so - the Court concludes that Plaintiff is not entitled to relief under this formulation of the standard of review.

After reviewing the entire record, the Court concludes that Plaintiff has failed to demonstrate that she is entitled to a TRO under either test applied in the Ninth Circuit. Plaintiff has failed to demonstrate a likelihood of success on the merits or that the balance of hardships tips sharply in her favor.

1

## Conclusion

2   The Ex Parte Application for Temporary Restraining Order (Doc. # 9) is **DENIED.**

3   DATED:  July 28, 2008

4

*William Q. Hayes*

5   **WILLIAM Q. HAYES**
United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28